UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:23-cr-00259 (TJK) |
| | : | |
| LOUIS MICHAEL CIAMPI, Jr., | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Louis Michael Ciampi, Jr. to 21 days of incarceration and $500 in restitution.

I.   **Introduction**

Defendant Louis Michael Ciampi, Jr., a 54-year-old sales executive and specialist, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.

Ciampi pled guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. As explained herein, a sentence of incarceration is appropriate in this case because Ciampi: (1) climbed through a broken window to gain access to the Capitol even after his friend warned him not to enter; (2) went to a sensitive place within the Capitol; (3) smoked marijuana in Senator Merkley's private side office just after

1

that office was ransacked by rioters; and (4) remained in the U.S. Capitol for more than forty minutes.

The Court must also consider that Ciampi's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the U.S. Capitol building and disrupt the proceedings. Here, the facts and circumstances of Ciampi's crime support a sentence of 21 days of incarceration.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

]

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 6 (Statement of Offense) ¶¶ 1–7.

***Defendant Ciampi's Role in the January 6, 2021 Attack on the Capitol***

Ciampi traveled to Washington, D.C. from Pennsylvania to participate in the "Stop the Steal" rally to protest the results of the 2020 Presidential Election. Ciampi learned about the January 6, 2021 rally over social media and from the tweets of former President Trump. Ciampi took a train from Philadelphia to Washington D.C. on January 5, 2021. On January 6, Ciampi and a friend left their hotel early because they knew the rally would be crowded.

Ciampi had consulted a "schedule" for the day and had planned on walking to the U.S. Capitol after the rally. He and his friend approached the Capitol from the West Front. Ciampi walked over the West Lawn and then up the stairs on the side of the Capitol. Ciampi grabbed two American flags that were laying on the stairs and handed one to his friend to carry. When Ciampi and his friend reached the Upper West Terrace, his friend advised Ciampi to turn around and leave. Ciampi did not take his friend's advice and continued walking to the building while his friend

returned down the stairs. As he approached the Capitol, Ciampi heard the sounds of flash bangs that were fired by police to repel the rioters, and he saw physical altercations between police and the rioters.

As Ciampi approached the Senate Wing doors, as he later admitted to the FBI (discussed below), he saw "some people were violently beating on the door and others were attempting to pull the pins out of the hinges." At approximately 2:49 p.m., Ciampi entered the United States Capitol through the broken windows by the Senate Wing door.



*Image 1: Ciampi entered the U.S. Capitol through a broken window by the Senate Wing Door.*

Once inside the Capitol, Ciampi walked down a hallway and entered Senator Merkley's office space, where an unknown rioter handed him a joint. Ciampi observed that the office had been ransacked by the rioters. He took two or three puffs from the joint before handing it back to the man, and he then exited and continued down the hallway.

3



*Image 2: Ciampi entered Senator Merkley's office and smoked marijuana*

Ciampi continued down the hallway towards the Crypt area at approximately 3:04 p.m.



*Images 3-4: Ciampi entered the Crypt*

At approximately 3:33 p.m., police directed Ciampi to the area of the Memorial doors, through which he exited.




*Images 5-6: Ciampi exited the Capitol through the Memorial Door at 3:33 p.m.*



*Image 7: Ciampi's 44-minute route through the Capitol*

*Ciampi's Interview with Law Enforcement*

On April 6, 2022, Ciampi was interviewed with counsel present at the FBI office in San Diego, California. Ciampi described his activities on January 6, 2021 as outlined above and was generally cooperative, identifying other information of which the government was previously unaware, including that he smoked marijuana at the Capitol. Ciampi estimated that he was in the U.S. Capitol for roughly 30-40 minutes, which is consistent with the video showing him entering through the window at the Senate Wing door at 2:49 p.m. and exiting through the Memorial doors at 3:33 p.m. (approximately 44 minutes). Ciampi also acknowledged to the FBI that "the video had since been deleted," but did not elaborate further. As is evident from the video footage of Ciampi's time in the Capitol, he was a prolific filmer.



*Image 8: Ciampi filming inside the U.S. Capitol*

*The Charges and Plea Agreement*

On August 1, 2023, with Ciampi's consent and pursuant to an agreement that he would plead guilty, the United States charged Ciampi by Information with violating 40 U.S.C. § 5104(e)(2)(G). On August 22, 2023, Ciampi entered a plea of guilty to the one-count Information. As part of the plea agreement, Ciampi agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Ciampi now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Ciampi faces up to six months of imprisonment and a fine of up to $5,000. Ciampi must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 21 days of incarceration and $500 restitution.

**A.  The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy. *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Ciampi's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Ciampi, the absence of violent or destructive acts is not a mitigating factor. Had Ciampi engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Ciampi's case is his willingness to disregard warning signs that he should not enter the Capitol, and having made the decision to join the mob, looking on as rioters ransacked private office spaces. Publicly available open source video shows Senator Merkley discussing the damage done to his office on January 6, 2021, when Ciampi was present in his office. *See* https://en-gb.facebook.com/ABCNews/videos/sen-jeff-merkley-shows-damage-done-to-office-after-pro-trump-mob-vandalized-capi/222464836136603/. Senator Merkley described the rioters as engaging in misconduct such as tearing things off the wall, including a Chinese scroll that a very good friend had made by a renowned artist. *Id*., at :50 elapsed time.

Ciampi observed the destruction wrought by the rioters; but undeterred after exiting Senator Merkley's office, he continued walking around the Capitol.

Ciampi admitted to the FBI that he deleted the video he took at the Capitol on January 6, 2021. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. The History and Characteristics of Ciampi

Ciampi has no criminal convictions. Ciampi benefitted from a diversion program from a Communications Act Violation from 2000, and he was "released" after being arrested for domestic violence in 2009. He is a college graduate who graduated from St. Joseph's University in 1991. According to the pre-sentence report, Ciampi has no drug or alcohol dependency issues, although he describes daily drinking, which he characterizes as a "habit."

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The defendant, through counsel, immediately accepted responsibility for his conduct and was cooperative during the government's investigation. Nonetheless, specific deterrence is

10

necessary in this case. On January 6, Ciampi repeatedly ignored the many warning signs that he should join rioters who ransacked the Capitol. Ciampi heard flashbangs and saw physical altercations between rioters and the police. Ciampi's friend was concerned about the violence and turned back and advised him to do the same. But Ciampi continued on undeterred, ignoring all the warning signs and entering the Capitol through a broken window. Even after seeing rioters destroy a Senator's office space, he meandered through the Capitol for an additional period of time. Specific deterrence is necessary to ensure Ciampi does not repeat the same mistakes the next time his political goals are frustrated by the outcome of an election.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[1] This Court must sentence Ciampi based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Ciampi has pleaded guilty to the Information charging him with violating 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a),

---

[1] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

A defendant's entry into a sensitive space, such as the Senator Merkley's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people. That person's presence is even more disruptive. An unauthorized individual in a private office poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

In *United States v. Matthew Buckler*, 22-cr-00162 (TNM), the defendant pled guilty to a misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) in connection with penetrating the Capitol building by climbing through a broken-out window at the Senate Wing door, as did Ciampi. Like Ciampi, Buckler went into Senator Merkley's side office, then left and went to the Crypt area. Buckler was in the Capitol for more than ten minutes, but less than forty, and also left through the Memorial doors. The Court sentenced Buckler to 14 days of home incarceration, $500 in restitution, and probation for 24 months. Buckler did not smoke marijuana in the U.S. Capitol.

The Court may also consider the sentence imposed in *United States v. Entrekin*, 21-CR-686 (FYP). Defendant Entrekin, like Ciampi, entered the Capitol through the Senate Wing door. Defendant Entrekin, like Ciampi, entered Senator Merkley's office. Judge Pan sentenced Entrekin to 45 days of incarceration and three years of probation. The government notes that Entrekin, unlike Ciampi, had a prior criminal history.

The Court may also consider the sentence imposed in *United States v. James Bonet*, 21-cr-00121 (EGS). Defendant Bonet, like Ciampi, entered the Capitol through the Senate Wing door area. Defendant Bonet, like Ciampi, entered Senator Merkley's office. Defendant Bonet, like Ciampi, smoked marijuana in Senator Merkley's office. Judge Sullivan sentenced Bonet to 90 days of incarceration, twelve months of supervised release and 200 hours of community service. The government notes that Bonet, unlike Ciampi, had a prior criminal history. Bonet also pled guilty to an offense under 18 U.S.C. § 1752(a)(1).

The Court may also consider the sentence imposed on Felipe Marquez. Marquez, like Ciampi, was present inside the private hideaway office of Senator Merkley, which suffered substantial damage. Marquez, like Ciampi, gained entry through the Senate Wing door, although Marquez entered through the door. Marquez, like Ciampi, walked to the Crypt. Felipe Marquez, who also entered Senator Merkley's office, received a sentence of three months' home detention and that the government had recommended four months' incarceration. *United States v. Marquez*, 21- cr-136 (RC). Judge Contreras, however, explained that Marquez's documented mental-health issues had a "significant influence" on his sentence, and believed that probation would best allow Marquez to receive mental-health treatment. Marquez, Tr. 12/10/21 at 32, 34, 37. One other defendant who entered Senator Merkley's office also received a probationary sentence, but he was a 68-year-old retiree with no criminal record who was there for less than a minute, and there was

13

no evidence that he engaged in any flagrant conduct while there. *See United States v. Edwards*, 21-cr-366 (JEB).

## V. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); see 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." See 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Ciampi must pay $500 in restitution, which reflects in part the role Ciampi played in the riot on January 6. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Ciampi's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Ciampi to 21 days of incarceration, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Ciampi's liberty as a consequence of his behavior.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ James D. Peterson*
James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov